[Civ. No. 52182. Second Dist., Div. Five. Oct. 17, 1978.]

FIREMAN'S FUND INSURANCE COMPANY,
Plaintiff and Appellant, v.
SECURITY PACIFIC NATIONAL BANK,
Defendant and Respondent,

798

**COUNSEL**

Montgomery, Bottum, Regal & McNally, Peter R. Regal and Robert Z. Oksner for Plaintiff and Appellant.

Charles J. Schufreider and Voegelin & Barton for Defendant and Respondent.

## Opinion

**STEPHENS, Acting P. J.**—This appeal is taken from an order of dismissal entered after Security Pacific National Bank's (hereinafter Security) general demurrer to Fireman's Fund Insurance Company's (hereinafter Fireman's) second amended complaint was sustained without leave to amend. Plaintiff-appellant Fireman's instituted these proceedings against defendant-respondent Security, among others, to recover damages in the amount of a $25,000 check deposited by one of the latter's customers, Jason A. Keyes (hereinafter Keyes), into his account having earlier forged one of the drawer's signatures on a check drawn from the account of Daniel Reeves & Company (hereinafter Reeves) at Banco Popular De Puerto Rico (hereinafter Banco).[1]

Fireman's contends that it has pleaded sufficient facts to allege a cause of action for common law negligence, as well as breach of certain warranties found within divisions 3 and 4 of the California Uniform Commercial Code (hereinafter Commercial or Com. Code).

The problem confronting us arose when Keyes absconded with $25,000. The check involved was prepared by Keyes, whose signature was one of two required on checks drawn on the Reeves account at Banco. After signing his own name to the check, Keyes forged the other required signature and the check was made payable to the order of "Security Pacific National Bank A/C No. 260 049 569 GC Associates."

At or about the same time the forgery was committed, Keyes opened an account at Security in the name of G. C. Associates. The account number was No. 260 049 569.[2] After the forgery, Keyes took the check to Security, the check having then a typewritten indorsement thereon, reading: "Deposit Only AC 049 569 G. C. Associates."

---

[1] Fireman's insured Reeves against any loss that it may sustain as a result of fraudulent or dishonest acts of any of its employees. Subsequent to demand by Reeves, Fireman's paid to Reeves the sum of $25,000, which represents the amount charged by Banco against the account of Reeves with respect to the check forged by Keyes, who at the time was employed as controller for Reeves. Fireman's having paid the $25,000, brought the action in its capacity as subrogee to the rights of its insured Reeves.

[2] No fictitious name was filed with either Los Angeles or Orange Counties. There was no bank effort to determine whether "G. C. Associates" was a business entity. The complaint, however, states that Keyes was a partner in "Grand Canyon Associates" which is "duly organized and existing under the laws of the State of Arizona." The account was listed under "G. C. Associates" and not "Grand Canyon Associates."

Security provisionally accepted the check for deposit to account No. 049569 and, allegedly, after the check was paid by Banco the money was withdrawn by Keyes, who was the authorized signatory for the G. C. Associates' account.

When Security forwarded the check for payment to Banco, Banco paid Security and debited the Reeves account. Although Reeves has demanded that its account be recredited, Banco continues to refuse to do so. In the interim, Fireman's Fund paid Reeves the $25,000 on its Fidelity bond and now seeks reimbursement from Security.[3] Fireman's has chosen to look to Security for its recovery so far as these three causes of action are concerned.

■ The code allocates risks for forgeries according to both the type of forgery involved and its underlying policy promoting free transferability of checks within the context of commercial transactions. Disregarding certain exceptions, ultimate liability for payment of a check bearing a forged drawer's signature rests with the drawee bank, which, in this case, is Banco.

The code provides that as between the drawee bank and the depositor, losses from a forged or unauthorized signature are borne by the bank[4] since payment not made pursuant to directions of a "properly payable" order cannot be charged to the depositor's account. (Com. Code, § 3401, subd. (1) and § 4401, subd. (1).[5] *Basch* v. *Bank of America* (1943) 22 Cal.2d 316 [139 P.2d 1].)

[3]Fireman's claims its rights are derivative to those of Reeves. Reeves, however, has lost nothing for it has been repaid by Fireman's. Banco has lost nothing for it has debited Reeves' account and Security has lost nothing for Banco paid the amount of the check.

[4]The common law and the case law under the code concur that, if payor bank and drawer are equally innocent, a payor bank is bound, at its peril, to determine the genuineness of the instrument and its indorsements. (*Hardex-Steubenville Corp.* v. *Western Pa. Nat. Bank* (1971) 446 Pa. 446 [285 A.2d 874]; *Columbian Peanut Company* v. *Frosteg* (5th Cir. 1973) 472 F.2d 476; *Security Commercial & Sav. Bank of San Diego* v. *Southern Trust & Commerce Bank* (1925) 74 Cal.App. 734 [241 P. 945].)

[5]Absent its ratification or negligence (Com. Code §§ 4406, 3406, 3404.), drawer can demand that the drawee recredit its account on the ground that a check bearing a forged drawer's signature is not "properly payable" within the meaning of code section 4401, subdivision (1), which reads in pertinent part: "(1) As against its customer a bank may charge against his account any item which is otherwise *properly payable* from that account

Reeves therefore has the right to insist that Banco recredit its account with the amount of the unauthorized payment. (*Stone & Webster Eng. Corp.* v. *First National B. & T. Co.* (1962) 345 Mass. 1 [184 N.E.2d 358, 99 A.L.R.2d 628].) (This recovery is sought in other counts, or count, in the complaint.)

We conclude that Fireman's is suing the wrong party. ■■■■■ If it has a cause of action against a bank,[6] it is not against Security, but against Banco for breaching its primary contractual obligation[7] to its customer (Reeves) and for violating its implicit duty under section 4401 to pay only checks "properly payable." As drawee, it was Banco's duty to know Reeve's signature, (*Basch* v. *Bank of America, supra,* 22 Cal.2d 316) and having payed the forged check, such payment is considered to have been made from its own funds. Absent negligence on the part of the drawer, Banco is liable even if it has paid in good faith and in accordance with reasonable commercial standards. (*Union Tool Co.* v. *Farmers etc. Nat. Bk.* (1923) 192 Cal. 40, 46 [218 P. 424, 28 A.L.R. 1417]; *Janin* v. *London & S. F. Bank* (1891) 92 Cal. 14, 22-23 [27 P. 1100]; *Hensley-Johnson* v. *Citizens Nat. Bank* (1953) 122 Cal.App.2d 22 [264 P.2d 973]; 10 Am.Jur.2d, Banks, § 603.) *This is, of course, not the issue before us and our statement here is not a holding binding upon Banco.* It may have other defenses such as the statute of limitations about which we have no knowledge.

---

. . . ." (Italics added.) Keyes' forgery did not operate as the ostensible drawer's signature.

"(1) Any unauthorized signature is wholly inoperative as that of the person whose name is signed unless he ratifies it or is precluded from denying it; but it operates as the signature of the unauthorized signer in favor of any person who in good faith pays the instrument or takes it for value." (Com. Code, § 3404, subd. (1).) Payment, therefore, was not in accordance with the drawer's instructions, since none were given. The payment violated the drawee bank's duty to charge its customer's account only for properly payable items.

[6]California cases have approved application of the doctrine of subrogation to the creditor's rights against third persons when the surety's equities are superior to those of the third party wrongdoer. Such a surety, upon his payment to the employer, is subrogated to the employer's rights. (*Meyers* v. *Bank of America etc. Assn.* (1938) 11 Cal.2d 92, 96-97 [77 P.2d 1084]; *Hartford Acc. & Indem. Co.* v. *Bank of America* (1963) 220 Cal.App.2d 545, 551-554 [34 Cal.Rptr. 23]; *Commercial Standard Ins. Co.* v. *Bank of America* (1976) 57 Cal.App.3d 241, 247 [129 Cal.Rptr. 91].)

[7]When a bank receives deposits, it has an implied contract with the customer to discharge the indebtedness thus created by honoring such checks as the depositor may draw on the bank, but the bank is not entitled to debit the depositor's accounts upon payments not made by his order or direction. (*Glassell Dev. Co.* v. *Citizens' Nat. Bank* (1923) 191 Cal. 375, 379 [216 P. 1012, 28 A.L.R. 1427]; *Wright* v. *Bank of California* (1969) 276 Cal.App.2d 485, 488 [81 Cal.Rptr. 11].)

806

Further, if there does lie a cause of action against Security, the proper plaintiff would be Banco.[8]

This summation is insufficient, however, to satisfy Fireman's contentions:

 The standard of review is well established for measuring the validity of a pleading that has not withstood a demurrer. While "[a] demurrer admits all material and issuable facts properly pleaded. . . . it does not admit contentions, deductions or conclusions of fact or law alleged therein." (*Daar* v. *Yellow Cab Co.* (1967) 67 Cal.2d 695, 713 [63 Cal.Rptr. 724, 433 P.2d 732].) It has also been established that ". . . 'plaintiff need only plead facts showing that he may be entitled to some relief [citation].' [Citation.] Furthermore, we are not concerned with plaintiff's possible inability or difficulty in proving the allegations of the complaint." (*Gruenberg* v. *Aetna Ins. Co.* (1973) 9 Cal.3d 566, 572 [108 Cal.Rptr. 480, 510 P.2d 1032].)

In its second amended complaint, Fireman's sets forth seven separate causes of action. Three of the causes of action were against respondent Security. The others are against other parties not involved in this appeal. In its fifth cause of action, Fireman's alleged that Security was negligent in its handling of the check in that it failed to "adhere to the reasonable commercial standards of the banking business in the community," and also violated its own standards as set forth in its operations manual.

In its sixth cause of action, it alleged that Security, in its capacity as joint payee of the forged check, breached its warranty of good title to Fireman's insured in that it did not have good title to the instrument and was not acting on behalf of a person who did have good title to the instrument.

In its seventh cause of action, Fireman's alleged that Security, in its capacity as collecting bank, breached its warranty of good title to

[8]While the drawee's liability for payment on a forged check cannot usually be shifted to the collecting bank after final payment has been made, code section 3418 states an exception where the latter has breached its warranty on presentment. This course, however, will be difficult in that under Commercial Code section 4207, subdivision (1)(b), each customer or collecting bank who obtains payment warrants only that it has "no knowledge that the signature of the maker or drawer is unauthorized." (Com. Code, § 4207, subd. (1)(b). See Baker, *The* Perini *Case: Double Forgery Revisited (Part II)* (1978) 11 U.C.C.L.J. 41, 58.)

Fireman's insured, as drawer of the check, who was a third party beneficiary of such warranty.

Fireman's did not discuss its sixth or seventh causes of action in either its opening or reply briefs, except most generally. However, a general demurrer will not be sustained if the pleading, liberally construed, states a cause of action on any theory. (*Minsky* v. *City of Los Angeles* (1974) 11 Cal.3d 113, 118 [113 Cal.Rptr. 102, 520 P.2d 726].) Thus, these causes of action are properly before this court.

Does appellant's complaint state a cause of action against Security?

1. *Has Fireman's, in its sixth and seventh causes of action, set forth facts sufficient to constitute a cause of action with respect to respondent Security for breach of warranty of good title, or otherwise?*

Fireman's sixth cause of action is based upon warranties of presentment and transfer as provided for in section 3417, subdivision (1)(a), of the Commercial Code. That section, which is contained within division 3 of the code governing "Commercial Paper" (Com. Code, § 3101), provides: "(1) Any person[9] who obtains payment or acceptance and any prior transferor warrants to a person who in good faith pays or accepts that (a) He has good title to the instrument or is authorized to obtain payment or acceptance on behalf of one who has a good title; and (b) He has no knowledge that the signature of the maker or drawer is unauthorized, except that this warranty is not given by a holder in due course acting in good faith. . . . (ii) To a drawer with respect to the drawer's own signature, whether or not the drawer is also the drawee; . . ."[10]

Fireman's seventh cause of action states that Security is liable for breach of warranty of title under section 4207, subdivision (1)(a), within division 4 of the Commercial Code governing "Bank Deposits and Collections" (Com. Code, § 4101), which provides: "(1) Each customer or collecting bank who obtains payment or acceptance of an item and each

---

[9]"Person" is defined by the Commercial Code as "an individual or an organization." (Com. Code, § 1201, subd. (30).)

[10]California code comment 3 to section 3417 notes that the effect of subdivision (1)(a) "is to permit the drawee to recover payment from a holder in due course when that payment is made upon a *forged indorsement*. Where the maker's or drawer's signature is forged (subdivision (1) (b)), the drawee who pays to a holder in due course cannot recover the amount paid." (Italics added.)

prior customer and collecting bank warrants to the payor bank or other payor who in good faith pays or accepts the item that (a) He has good title to the item or is authorized to obtain payment or acceptance on behalf of one who has a good title; and (b) He has no knowledge that the signature of the maker or drawer is unauthorized, except that this warranty is not given by any customer or collecting bank that is a holder in due course and acts in good faith. . . . (ii) To a drawer with respect to the drawer's own signature, whether or not the drawer is also the drawee; . . ."

Fireman's has pleaded both of these sections, despite the similarity of their provisions,[11] as a result of varying its statement of the capacity in which Security acted during the transaction with Keyes. In its sixth cause of action, Fireman's alleges that Security was liable as "joint payee." The seventh cause of action, however, is predicated upon the allegation that Security acted as "collecting bank."

This variance in allegations apparently stems from Security's allegedly being named payee on the face of the check in addition to acting as the conduit through which funds were collected on behalf of its customer's (Keyes) account. (See Com. Code, § 4105.)[12]

While we recognize the permissibility of pleading "inconsistent counts" (3 Witkin, Cal. Procedure (2d ed. 1971) Pleading, §§ 290-292, pp. 1965-1967), it is our conclusion that Security is precluded from being a "payee" in the instant case. (See *infra.*)

In any event, for our purposes, the warranties of sections 3417, subdivision (1)(a) and 4207, subdivision (1)(a) are identical in that they both present the issue, namely, whether Security breached a warranty of good title under the facts of the case at bar.[13]

---

[11]"Subject to certain exceptions peculiar to the bank collection process and except that they apply only to customers and collecting banks, the warranties and engagements to honor in this section are identical in substance with those provided in . . . [s]ection 3—417." (Com. Code, § 4207, U. Com. Code Com. 1.)

[12]Under section 4105, subdivision (d), a "collecting bank" is defined as "any bank handling the item for collection except the payor bank." The banks defined by, and included within, section 4105 generally "exclude a bank to which the item is issued, as such bank does not take by transfer except in the particular case covered where the item is issued to a payee for collection, . . ." (Com. Code, § 4105, U. Com. Code Com. 1.)

[13]The official comments on the Uniform Commercial Code note that sections 3417 and 4207 are "identical in substance" (Com. Code, § 4207, U. Com. Code Com. 1), and that for items involved in the bank collection process, section 4207 contains warranties

■ Considering Fireman's right to maintain an action based on the warranties of sections 3417 and 4207, we first ascertain whether Reeves (to whose rights Fireman's is subrogated), as drawer of the check in question, may rely upon the aforementioned warranty provisions.

Although it had been the general view that section 4207 did not specifically provide for a direct cause of action by a drawer[14] against a collecting bank, in *Sun 'N Sand, Inc.* v. *United California Bank* (1978) 21 Cal.3d 671 [148 Cal.Rptr. 329, 582 P.2d 920], the California Supreme Court—in reexamining the rule of *Cal. Mill Supply Corp.* v. *Bank of America* (1950) 36 Cal.2d 334 [223 P.2d 849]—held to the contrary. The court stated: "[T]he drawer of a check whose account is charged is [an other payor] within the meaning of section 4207 and may maintain an action against a collecting bank based on that section's warranties." (*Id.,* at pp. 682, 683.)[15]

Fireman's, then, may rely on the warranty of good title provided by sections 3417 and 4207, but do the alleged facts, if assumed to be true, constitute a breach of said warranties?

■ The warranty of good title provisions of sections 3417 and 4207 require a very limited inquiry: "does the instrument presented contain all

corresponding to those provided in section 3417 (Com. Code, § 3417, U. Com. Code Com. 1).

[14]The presentment warranty of California Uniform Commercial Code section 4207, subdivision (1), runs "to the payor bank or other payor . . . ." Thus, the code specifically permits the payor-drawee bank to recover payment from a collecting bank where any of the indorsements to it have been forged. (See Com. Code, § 3417, U. Com. Code Com. 1.)

[15]The court further held that "the drawer of a check is 'a person who in good faith pays' within the meaning of section 3417 and may maintain an action against the payee of a check based on the section 3417 warranties." (*Id.,* at p. 683.)

The Supreme Court noted that the rule of *California Mill Supply Corp., supra,* (requiring the drawer to proceed against the drawee bank) was thought to be necessary because the "conceptual basis for [the collecting bank's liability] was an implied contractual warranty . . . ." (*Id.,* at p. 681.) Since this rule conflicted with the objective of avoiding multiple suits, the court reexamined it "in light of section 4207, which shifts the basis for imposing liability on the collecting bank from an implied contractual warranty to an explicit statutory warranty." (*Id.,* at p. 681.) The court further noted that requiring the drawer to proceed against the drawee bank, and then the latter to proceed against the collecting bank, ran " 'contra to the code's explicit underlying purposes "to simplify, clarify and modernize the law governing commercial transactions." (§ 1102, subd. (2)(a).)' " (*Id.,* at p. 681, quoting from *Cooper* v. *Union Bank* (1973) 9 Cal.3d 371, 381-382 [107 Cal.Rptr. 1, 507 P.2d 609].)

necessary indorsements and are such indorsements genuine or otherwise deemed effective?" (*Sun 'N Sand Inc.* v. *United California Bank, supra,* 21 Cal.3d 671, 687; see also Whaley, *Forged Indorsements and the UCC's "Holder"* (1972) 6 Ind.L.Rev. 45, 59-61; White & Summers, Uniform Commercial Code (1972) pp. 510, 521, fn. 6; *Bagby* v. *Merrill Lynch, Pierce, Fenner & Smith, Inc.* (8th Cir. 1974) 491 F.2d 192, 199.)

■ Since the warranty of good title relates only to the validity of necessary indorsements, the question is whether the typewritten indorsement "Deposit only A/C 049 569 G. C. Associates" can be considered to be a forgery. Commercial Code, section 1201, subdivision (43), defines an "unauthorized" signature or indorsement as "one made without actual, implied or apparent authority . . . ." Section 3401, subdivision (2), states that "[a] signature is made by use of any name, including any trade or assumed name, upon an instrument, or by any word or mark used in lieu of a written signature." The indorsing signature, therefore, "may be handwritten, typed, printed or made in any other manner," and "may be made in any name, including any trade name or assumed name, however false and fictitious, which is adopted for the purpose." (Com. Code, § 3401, U. Com. Code Com. 2.) The fact that the check in question had a typewritten indorsement rather than a written signature is immaterial in determining whether the indorsement was valid, and the issue is whether Keyes had the authority to indorse the Reeves check in the name of G. C. Associates.

Fireman's alleges that Keyes was a "co-partner and agent" of G. C. Associates, with authority as signator on account No. 260 049 569. From these allegations we conclude that Keyes *did* have such authority to indorse the check in question and that such indorsement was valid.

We hold, therefore, that Fireman's has failed to state a cause of action against Security under either section 3417 or section 4207 of the Commercial Code, and that the trial court's dismissal of Fireman's sixth and seventh causes of action was proper.

2. *Does a noncustomer drawer whose signature was forged on a check by an employee (with authorization to sign in his own capacity) have a right of action against a bank, functioning in the alternative as either a payee or collecting bank, whose alleged negligent handling of the check aided the forger in collecting the proceeds from the drawer's account at the drawee bank?*

In its fifth cause of action, Fireman's alleges that Security owed a duty to Reeves to use reasonable care in dealing with the check and proceeds thereof, and to "adhere to the reasonable commercial standards of the banking community." Fireman's further alleges that this duty of care was breached by failure of Security to adhere to those standards and that Security further acted negligently by violating its own standards as set forth in its operations manual. Fireman's contends that the violation of either or both of these standards is evidence of negligence.[16]

■ Regarding the elements of a cause of action for negligent injury to person or property, the complaint "must allege (1) defendant's legal duty of care toward plaintiff . . . ; (2) defendant's breach of duty—the negligent act or omission . . . ; (3) injury to plaintiff as a result of the

---

[16]Fireman's fifth cause of action against Security in pertinent part alleges that:

"29. . . . [Security] owed a duty to plaintiff to use reasonable care in dealing with said check and proceeds thereof, and to adhere to the reasonable commercial standards of the banking business in the community.

"30. [Security], through the following acts or omissions, has breached its duty of care to plaintiff's insured [and has] violated the standards set forth in its operation manual with respect to handling items of the nature set forth in the within complaint:

"a. Failing to establish the identity of the depositor of said check [Keyes] by referring to [his] prior banking connections or by referring to [his] employer;

"b. Failing to ascertain the identity and ownership of the partnership known as G.C. Associates;

"c. Failing to obtain a credit check on G. C. Associates prior to opening account in [its] name . . . ;

"d. Failing to obtain a certified copy of a fictitious business name statement of G. C. Associates;

"e. Failing to contact plaintiff's insured [Reeves] regarding the disposition of the proceeds of the check although the check might reasonably be construed as being payable to . . . Security Pacific.

"f. Failing to have a staff member of . . . Security Pacific . . . review the deposit of [the] check because of its exceptional size;

"g. Failing to contact the drawer [Reeves] of said check although there was an ambiguity on the face of the check with respect to whether the proceeds of the check were to be deposited to the account of G. C. Associates or whether the check was jointly payable to [Security] and G. C. Associates;

"h. Failing to contact [Reeves] although [Keyes] appeared as joint maker of the check and as a signator on the account maintained with [Security] and G. C. Associates;

"i. Failing to inspect the purported endorsement on behalf of G. C. Associates which reveals that it does not contain the signature of any person purporting to sign on behalf of said partnership;

"j. Failing to ascertain whether the endorsement of [Security] as joint payee of the check would be required by the drawer of the check.

" . . . . . . . . .

"32. As a proximate and direct result of the acts of defendant [Security] . . . plaintiff's insured [Reeves] suffered the loss of $25,000."

breach—proximate or legal cause . . . ; [and] (4) damage to plaintiff
. . . ." (3 Witkin, Cal. Procedure (2d ed. 1971) Pleading, § 450, p. 2103.)

Although the legal conclusion that "a duty" exists is neither necessary
nor proper in a complaint, facts which cause it to arise (or from which it is
"inferred") are essential to the cause of action. (*Palmer* v. *Crafts* (1936) 16
Cal.App.2d 370, 374 [60 P.2d 533].) The present California test for
negligence liability is much broader and based simply on foreseeability of
the risk and proximate cause. (*Dillon* v. *Legg* (1968) 68 Cal.2d 728, 740
[69 Cal.Rptr. 72, 441 P.2d 912, 29 A.L.R.3d 1316].) It was the application
of this test, "foreseeability of the risk," which led the court, in *Sun 'N
Sand, supra,* 21 Cal.3d 671, at page 695, to find the existence of a duty on
the part of a collecting bank with regard to its handling of a noncustomer
drawer's check made payable to the bank, but negotiated by a third party
for his own benefit.

Furthermore, the *Sun 'N Sand* court rejected the bank's contention that
section 1103 disallowed a cause of action for common law negligence
under the facts of that case. (*Id.,* at p. 696.)

Like the case at bar, *Sun 'N Sand* involved the question of the right of
an employer to recover funds embezzled by an employee through the
manipulation of company checks. The employee in that case, Eloise
Morales, prepared checks for signature by a corporate officer. Her
scheme was a simple one: over a three-year period she prepared a series
of checks payable to a bank (UCB) at which she deposited the checks into
her personal account, after obtaining the necessary authorized signatures.
The officer signing the checks, did so under the mistaken belief that they
represented sums his company owed to the bank. Such debts, however,
did not in fact exist. The checks were originally made out in small
amounts. After being signed, however, employee Morales would alter
them, increasing the amount of each check to several thousand dollars.
(*Id.,* at p. 678.)

The employer based one of his causes of action against the bank on the
theory of negligence—on the allegation that "[a]lthough UCB was the
named payee, it 'caused or permitted' the proceeds of the checks to be
deposited in" Morales' personal account which she maintained at UCB.
(*Id.*) As in the case at bar, UCB (the collecting bank) presented the
checks to the employer's bank (drawee bank) and the latter paid them
after charging Sun 'N Sand's account for their face amounts. Again, as

here, Sun 'N Sand proceeded, inter alia, upon a negligence cause of action, asserting that UCB breached its duty of care in permitting checks on which it was named as payee to be deposited in the personal account of Sun 'N Sand's employee.

In reversing the lower court's judgment (order of dismissal), the Supreme Court found that the allegation stated a cause of action for negligence. (*Id.,* at p. 703.) The court, however, was very careful to limit the circumstances upon which such a duty to make inquiry arises. Relying upon the principle of *Pacific Finance Corp.* v. *Bank of Yolo* (1932) 215 Cal. 357 [10 P.2d 68], reaffirmed in *Pacific Indemnity Co.* v. *Security First Nat. Bank* (1967) 248 Cal.App.2d 75 [56 Cal.Rptr. 142],[17] the *Sun 'N Sand* court stated that the bank's "duty is narrowly circumscribed: it is activated only when checks, not insignificant in amount, are drawn payable to the order of a bank and are presented to the payee bank by a third party seeking to negotiate the checks for his own benefit." (21 Cal.3d at p. 695.) In emphasizing that the bank's obligation is minimal, the court continued by stating that "[w]e hold simply that the bank may not ignore the danger signals inherent in such an attempted negotiation. There must be *objective indicia* from which the bank could reasonably conclude that the party presenting the check is authorized to transact in the manner proposed." (*Id.,* at pp. 695-696. Italics added.)

The court also rejected UCB's contention that section 1103[18] of the code precluded the plaintiff from proceeding by means of a common law action for negligence. (*Id.,* at p. 696.) The court found that the code did not articulate a loss distributive scheme "that applies to fact patterns such as alleged herein [which would displace] common law negligence actions." (*Id.*)

The factual pattern in *Sun 'N Sand* is somewhat similar to that of the instant case; they are, however, critically different in two respects: First,

---

[17]Citing to a quote in *Pacific Indemnity Co., supra,* 248 Cal.App.2d 75, the court noted that it is a well-established rule that " ' "[w]here a check is drawn to the order of a bank to which the drawer is not indebted, the bank is authorized to pay the proceeds only to persons specified by the drawer; it takes the risk in treating such a check as payable to bearer and is placed on inquiry as to the authority of the drawer's agent to receive payment." (9 C.J.S., Banks and Banking, § 340, p. 683.)' (248 Cal.App.2d at p. 94.)" (*Sun 'N Sand, Inc.* v. *United California Bank, supra,* 21 Cal.3d 671, 694.)

[18]Commercial Code, section 1103, states in pertinent part as follows: "Unless displaced by the particular provisions of this code, the principles of law and equity . . . shall supplement its provisions."

the defendant bank in the first case was the named payee of the check in question. Second, the check in *Sun 'N Sand* did not involve a forged drawer's signature as did the check in question in the case at bar. This second fact brings into play code section 3418 which *does* articulate a loss distributive scheme that displaces an action for common law negligence.

In order to determine whether Security's duty, if any, can rest upon the "foreseeability of the risk" test, we must first clarify in what capacity Security is to be held.

### A. *Was Security a payee?*

Fireman's specifically alleges that the check in question could be construed to be payable to Security itself, and that for the purpose of the demurrer this allegation must be accepted as true.

■ Fireman's contention, however, that Security is the payee of the check in question is based solely upon the "alleged" ambiguity of the payee line: "Security Pacific National Bank A/C No. 260 049 569 G. C. Associates." In support of its argument that Security was a payee, Fireman's incorrectly relies on Commercial Code section 3117, subdivision (c).[19] This code provision makes checks payable to a named person with additional words of description (other than words describing him as agent or officer, or fiduciary) payable to the payee unconditionally, with the additional words having no effect whatever.

Fireman's contends that because Security is not specifically designated as agent (Com. Code, § 3117, subd. (a)), or as fiduciary (Com. Code, § 3117, subd. (b)) that it must therefore be an "unconditional payee" under Commercial Code section 3117, subdivision (c).

However, a review of Commercial Code section 3117, Uniform Commercial Code Comment 3, which expands on subdivision (c),

---

[19]Commercial Code section 3117 provides as follows:
"An instrument made payable to a named person with the addition of words describing him
"(a) As agent or officer of a specified person is payable to his principal but the agent or officer may act as if he were the holder;
"(b) As any other fiduciary for a specified person or purpose is payable to the payee and may be negotiated, discharged or enforced by him.
"(c) In any other manner is payable to the payee unconditionally and the additional words are without effect on subsequent parties."

indicates that this subdivision does not apply to the facts presented in the case at bar.[20] Subdivision (c) deals with the words of description which are to be "treated as *mere identification,* and not in any respect as a condition of payment," or descriptive words which *do* "*not* name the . . . beneficiary." (Italics added.)

The additional words on the payee line of the forged check—"A/C No. 260 049 569 G. C. Associates"—do not merely "describe" Security. ▪ It is a settled rule of statutory construction that statutes are to be given a reasonable and common sense construction (*Ivens* v. *Simon* (1963) 212 Cal.App.2d 177, 181 [27 Cal.Rptr. 801]), in accordance with their apparent purpose and intention (*County of Alameda* v. *Kuchel* (1948) 32 Cal.2d 193, 199 [195 P.2d 17]), and one that is practical rather than technical. (*Estate of Anderson* (1960) 179 Cal.App.2d 535 [3 Cal.Rptr. 697].) The words must be read in context, keeping in mind the nature and obvious purpose of the statute (*Johnstone* v. *Richardson* (1951) 103 Cal.App.2d 41, 46 [229 P.2d 9]), and the statutory language applied must be given such interpretation as will promote rather than defeat the objective and policy of the law. (*City of L. A.* v. *Pac. Tel. & Tel. Co.* (1958) 164 Cal.App.2d 253, 256 [330 P.2d 888].)

The purpose of section 3117, subdivision (c), is two-fold: first, that "the person named [as payee] may negotiate . . . the instrument if he is otherwise identified, even though he does not meet the description"; and, second, that "[a]ny subsequent party [e.g., indorsers, or depository, collecting or payor banks] dealing with the instrument may disregard the description and treat the paper as payable unconditionally to the individual . . . ." (Com. Code, § 3117, U. Com. Code Com. 3.)

It is clear from this comment that the purpose and intended practical effect of section 3117 is to protect both the payee, in his right to negotiate the instrument, and the subsequent transferor, from being misled. Its purpose is *not* to protect the drawer of the check.

Few reported cases have involved interpretation of Commercial Code section 3117, subdivision (c), and all are clearly distinguishable from the case at bar.

---

[20]Uniform Commercial Code Comment 3 provides in part as follows: "Any other words of description, such as 'John Doe, 1121 Main Street,' 'John Doe, Attorney,' or 'Jane Doe, unremarried widow,' are to be treated as *mere identification,* and not in any respect as a condition of payment. The same is true of any description of the payee as 'Treasurer,' 'President,' 'Agent,' 'Trustee,' 'Executor,' or 'Administrator,' *which does not name the principal or beneficiary."* (Italics added.)

The seminal case, *West Penn Administration, Inc.* v. *Union National Bank* (1975) 233 Pa.Super. 311, [335 A.2d 725], involved checks representing payments into pension and welfare trust funds on behalf of labor unions, which named as payee a certain bank, followed by the designation of a particular "contribution account."[21] The court held that the bank, rather than the named "contribution account," was the real payee. *However, the court relied upon language of an express agreement* between plaintiff and defendant bank which had been used to·establish the accounts, and also upon subsequent conduct by the defendant bank consistent with the agreement.[22]

In *Frost National Bank* v. *Nicholas and Barerra* (Tex.Civ.App. 1976) 534 S.W.2d 927, the court found section 3117, subdivision (c), to be applicable where checks had been drawn naming as payee "Depository Account No. 607." Although the court held that the words "No. 607" merely amounted to "words of description," it based its conclusion upon facts which are not present in the case at bar. First, the number "607" was not an account number, and had been placed upon the check by the embezzler "to lend credence to [his] whole scheme." (*Id.,* at p. 933.) Furthermore, there actually did exist an account called "Depository Account," and the deposit was made with preprinted deposit slips coded with the identifying account number and name.

In *Swiss Baco Skyline Logging, Inc.* v. *Haliewicz* (1977) 18 Wn.App. 21 [567 P.2d 1141], the court held that the designation "Emil Haliewicz, Swiss Baco Skyline Logging, Inc." on the check in question rendered Haliewicz (former president of Swiss Baco) the unconditional payee. However, in reaching its conclusion the court referred to the presence of the comma, separating the two parties, as introducing a "patent ambiguity" on the face of the instrument; and although the language admittedly was "not typical of instruments payable with words of description . . . ," based its finding upon evidence that "the parties responsible for this language intended the instrument to be payable to Haliewicz *unconditionally.*" (Italics in original. *Id.,* at p. 1147.)

---

[21]The check was made payable to the order of "Pittsburgh National Bank Carpenters Contribution Account." (*Id.,* at p. 729.)

[22]The bank was specifically designated as " 'a depository of [the] organization and . . . authorized to accept [checks] for deposit to the credit of [the] organization . . . .' " Moreover, the bank was " 'authorized and directed to make payments periodically from [such] funds on deposit with it in the . . . account . . . .' " (*Id.,* at p. 731 of 335 A.2d).

Not only did the evidence reveal that the bank subsequently acted in a manner consistent with the agreement, but in addition "appellant's own three expert witnesses testified that in their opinions [the bank] was the payee of the checks." (*Id.*)

In view of the aforementioned cases and upon an analysis of the comments to section 3117, the most reasonable construction of the payee line in the instant case is to interpret it as falling within the ambit of Commercial Code section 3117, subdivision (a), which provides that "[a]n instrument made payable to a named person with the addition of words describing him (a) As agent or officer of a specified person is payable to his principal but the agent or officer may act as if he were the holder."[23]

■ We find, therefore, that the meaning of the payee line as set forth on the instrument in question is that the inclusion of "A/C No. 260 049 569 G. C. Associates," was not added for the purpose of merely describing Security, but rather, for the purpose of making the instrument payable to the specific account of G. C. Associates, the principal.[24]

The *Sun 'N Sand* court found that it was "UCB's *conduct* [italics in original] in crediting the embezzler's account with checks *drawn payable to UCB* that form[ed] the basis for relief [therein]." (21 Cal.3d 671, 693. Italics added.) The court further noted that a duty to make reasonable inquiries arose because the " 'defendant's name as payee of the check indicated the drawer's intention to lodge the moneys in its custody and place them under its control, and *nothing further than this was inferable from the language of the check.*' " (*Id.,* at p. 693, citing *Pacific Finance Corp.* v. *Bank of Yolo* (1932) 215 Cal. 357, 360-361 [10 P.2d 68], quoting *Sims* v. *United States Trust Co.* (1886) 103 N.Y. 472 [9 N.E. 605]. Italics added.) It is upon these facts that the court concluded that UCB had

---

[23]Uniform Commercial Code Comment 1 discusses subdivision (a) as follows: "Subsection (a) extends the policy of the original Section 42, which covered only cashiers and fiscal officers of banks and corporations, to any case where a payee is named with words describing him as agent or officer of another named person. The intent is to include all such descriptions as 'John Doe, Treasurer of Town of Framingham,' 'Joe Doe, President Home Telephone Co.,' 'John Doe, Secretary of City Club,' or 'John Doe, agent of Richard Roe.' In *all such cases it is commercial understanding that the description is not added for mere identification but for the purpose of making the instrument payable to the principal, and that the agent or officer is named as payee only for convenience in enabling him to cash the check.*".(Italics added.)

[24]This interpretation is consistent with Commercial Code section 4201, subdivision (1), which states: "Unless a contrary intent clearly appears and prior to the time that a settlement given by a collecting bank for an item is or becomes final . . . the bank is an agent or subagent of the owner of the item and any settlement given for the item is provisional."

When the bank receives a final settlement for an item it has forwarded for collection, the agency status, in the absence of mutual agreement to the contrary, typically ends and the bank becomes a debtor of its customer. (*Cooper* v. *Union Bank* (1973) 9 Cal.3d 371, 378 [107 Cal.Rptr. 1, 507 P.2d 609].)

"affirmatively engaged in risk-creating conduct," and it was also in this context that the "circumstances alleged were sufficiently suspicious, and the risks thus sufficiently apparent, that a duty to make reasonable inquiries arose." (*Id.,* at p. 693.) Not only was Security not the named payee on the check in question, but the inclusion of "A/C No. 260 049 569 G. C. Associates," on the payee line was precisely such authorization "to pay the proceeds only to persons specified by the drawer" as was lacking in the case of *Sun 'N Sand.* (21 Cal.3d 671, 694.)

Security not being a "payee" of the check in question, the issue then concerns itself with Security's status as a collecting bank and the significance of the check in question bearing a forged drawer's signature.

B. *What, if any, is the liability of Security acting as a collecting bank, to a noncustomer drawer whose signature was forged on a check handled for deposit and presentment by Security in an allegedly negligent manner.*

Fireman's contends that:

(1) Section 4202 of the California Commercial Code imposes a duty of due care on collecting banks in accepting checks for deposit and presentment, and that this duty runs to a noncustomer drawer.

(2) Neither existing case law nor the final payment rule as embodied in California Uniform Commercial Code section 3418 bars a drawer's direct cause of action for common law negligence against a collecting bank for its handling of a check bearing a forged maker's signature.

(3) To allow such a cause of action, if found not to be expressly barred, would not vitiate the policy of the final payment rule.

(4) The requirements of good faith and reasonable commercial standards imposed upon collecting banks by the code are breached by mere negligent acts; and

(5) Its second amended complaint alleges a negligent breach by Security of the above mentioned standards, and also a breach of its common law duty, sufficient to withstand a general demurrer.

Noting that the provisions in question involve certain ambiguities, we turn to the Commercial Code for a statement of the underlying intention of its drafters. Our analysis of the code is premised upon the applicable provisions relating to rules of construction.

In drafting the Uniform Commercial Code, its authors first delineated central "underlying purposes and policies," as a guide to aid in its interpretation. Section 1102, subdivision (2), states that:

"(2) [The] [u]nderlying purposes and policies of this code are

"(a) To simplify, clarify and modernize the law governing commercial transactions;

"(b) To permit the continued expansion of commercial practices through custom, usage and agreement of the parties;

"(c) To make uniform the law among the various jurisdictions."

They also directed that "[t]his code shall be liberally construed and applied to promote its underlying purposes and policies." (Com. Code, § 1102, subd. (1).)[25] The comments to the individual code sections are provided "to promote uniformity [and] to aid in viewing the Act as an integrated whole . . . ."[26]

In light of the above stated underlying purposes of the various sections of the code that are in contention:

---

[25]Uniform Commercial Code Comment 1 to section 1102 further states that "the proper construction of the Act requires that its interpretation and application be limited to its reason. . . . [¶] [And the] text of each section should be read in the light of the purpose and policy of the rule or principle in question, as also of the Act as a whole, and the application of the language should be construed narrowly or broadly, as the case may be, in conformity with the purposes and policies involved."

[26]"Uniformity throughout American jurisdictions is one of the main objectives of this Code; and that objective cannot be obtained without substantial uniformity of construction. To aid in uniform construction these Comments set forth the purpose of various provisions of this Act to promote uniformity, to aid in viewing the Act as an integrated whole, and to safeguard against misconstruction." (Uniform Commercial Code, Comment (1962 Official version), reprinted in Braucher & Sutherland, Commercial Transactions 1 (1968 ed.).)

1. *Has Security breached a duty of care imposed upon it, as a collecting bank, pursuant to Commercial Code section 4202.*

The responsibility of a collecting bank is set forth in Commercial Code section 4202, subdivision (1), which provides as follows:

"A collecting bank must use ordinary care in

"(a) Presenting an item or sending it for presentment; and

"(b) Sending notice of dishonor or nonpayment or returning an item other than a documentary draft to the bank's transferor after learning that the item has not been paid or accepted, as the case may be; and

"(c) Settling for an item when the Bank receives final settlement; and

"(d) Making or providing for any necessary protest; and

"(e) Notifying its transferor of any loss or delay in transit within a reasonable time after discovery thereof."

Fireman's contends that a duty of care is imposed on collecting banks pursuant to Commercial Code section 4202. In its general statement, Fireman's is correct; however, the *presentment* of the subject item is not in question in the case at bar. Presentment is made by a presenting bank at a place where the payor bank (Banco) has requested that presentment be made. (U. Com. Code, § 4204, subd. (3); Com. Code, § 4204, subd. (2).)

Fireman's cites in support of its contention *Frontier Refining Co.* v. *Home Bank* (1969) 272 Cal.App.2d 630 [77 Cal.Rptr. 641]. There the plaintiff-drawer brought an action against the defendant-payee bank for payment made by said bank on a check which was issued as a result of a mistake by the drawer. Although the court held that the collecting bank status did not apply, in that the check was made payable to the bank, it specifically noted that even as a collecting bank the defendant would not have been liable, since the duty of ordinary care imposed under section 4202 of the Commercial Code, subdivision (1)(a), does not create a duty of ascertaining whether or not a check was issued by mistake. (*Id.,* at p. 636.) ■ Similarly, we find that section 4202, subdivision (1)(a), does not impose upon a collecting bank the duty of determining whether

the check bore a forged maker's signature. Uniform Commercial Code Comment 3 refers to subdivision (1) as "describ[ing] *types* of basic action with respect to which a collecting bank must use ordinary care." (Italics in original.) Moreover, Commercial Code section 3504, subdivision (1), defines presentment as "a demand for acceptance or payment made upon the maker, acceptor, drawee or other payor by or on behalf of the holder." Not only does Fireman's fail to allege negligence in regard to the above actions, but this is exactly the point in the collection process which marks the inception of the duty of the payor bank (Banco) to detect a forged signature.

Even viewing the receiving and initial processing of a check as part of the process of "presentment," such duties as imposed on a collecting bank by section 4202 of the code, when properly applied, should be imposed only by the owner of the instrument who initiates collection or by a prior collecting bank.

2. *May Security avail itself of California Commercial Code section 3418, and if so, does this section prevent a drawer from bringing a direct suit against a collecting bank for negligence—expressly or impliedly?*

It is worth repeating that, unlike *Sun 'N Sand, supra,* 21 Cal.3d 671, our case deals essentially with payment over a forged drawer's signature, and a collecting bank's liability to the noncustomer[27] drawer for such payment.

■ The general rule is that ultimate liability with respect to a forged indorsement other than by the drawer lies with the collecting bank.[28] The reason most often cited is that the collecting bank is in the best position to ascertain the validity of an indorsement (other than the drawer's) since it presumably confronts the indorser. Conversely, when dealing with a forged drawer's signature, it is reasoned that the drawee bank, possessing the signature card of the drawer, is in the best position to ascertain the forgery. Consequently, liability for payment over a forged drawer's

---

[27]Commercial Code section 4104, subdivision (e), defines "customer" as "any person having an account with a bank or for whom a bank has agreed to collect items and includes a bank carrying an account with another bank."

[28]The payor bank will have to bear the loss if neither the depositor nor any of the collecting banks had knowledge of the forgery. If one of the prior parties in the collection chain had knowledge of the forgery at the time he transferred the check, the payor bank could recover from such person on a breach of warranty under section 4207.

signature lies solely with the drawee bank, unless the person obtaining payment has knowledge of the forgery.

This rule, first enunciated in *Price* v. *Neal* (1762) 3 Burr. 1354, is embodied in Commercial Code section 3418 (restating the rule of former Civ. Code, § 3143), which provides as follows: "Except for recovery of bank payments as provided in the division on bank deposits and collections (Division 4) and except for liability for breach of warranty on presentment under the preceding section, payment or acceptance of any instrument is final in favor of a holder in due course, or a person who has in good faith changed his position in reliance on the payment."[29]

Before reviewing the meaning of this section and its applicability to the case at bar, it is essential to determine whether or not Security qualifies for its protection.

Under section 3418 payment or acceptance of an instrument is final in favor of a holder in due course, or in favor of "a person who has in good faith changed his position in reliance on the payment."[30]

3. ▮ *Did Security in good faith change its position in reliance on the payment made by Banco?*

Fireman's alleges that Security allowed Keyes to withdraw the $25,000 *after* it had received final payment. This satisfies the "reliance" requirement of section 3418. The determinative fact regarding the issue of

---

[29]Unlike the forged indorsement situation, the drawee is precluded from shifting the loss to the collecting bank by the final payment rule. While section 4207, subdivision (2)(b), does contain a warranty that "[a]ll signatures are genuine . . ." that subsection does not run to payor banks, and the collecting bank will not normally break the section 4207, subdivision (1), warranties. White and Summers note that none of the section 4207, subdivision (1), warranties "are broken by the usual transfer of a check bearing a forged signature of a drawer unless the transferor has 'knowledge' of the forgery. In a typical case . . . there will be no such knowledge and neither 4-207(1) (a), (b) or (c) will be broken. [¶] One might argue that a party who presents a check bearing a forged drawer's signature breaks the warranty of 'good title' in 4-207(1), (a); however . . . [i]f the presenter breaks the good title warranty anytime the drawer's signature is forged, the 4-207 (1) (b) warranty against knowledge of such forgery would be superfluous." (White & Summers, *supra,* pp. 520-521.)

[30]Commercial Code section 3418 reads as follows: "Except for recovery of bank payments as provided in the division on bank deposits and collections (Division 4) and except for liability for breach of warranty on presentment under the preceding section, *payment* or acceptance of any instrument *is final in favor of a holder in due course, or a person who has in good faith changed his position in reliance on the payment.*" (Com. Code, § 3418. Italics added.)

reliance is not that the bank gave value, but rather that it changed its legal position only after knowledge of payment by Banco. Hence, it "relied" upon the payment before changing its "position."[31]

Was Security's reliance in good faith? California Uniform Commercial Code Comment 2 to section 3302 (delineating the meaning of "good faith" with regard to holder in due course status) refers to the term "good faith" as "honesty in fact in the conduct or transaction concerned." (Com. Code, § 1201, subd. (19).) It is of note that this comment continues as follows: "The presence of suspicious circumstances sufficient to put a reasonably prudent person on inquiry does *not* negative existence of good faith." (Italics added.)

Fireman's maintains, however, that even conceding the fact that Security has met the requirement of "honesty in fact," the qualification for protection under section 3418 regarding good faith requires a consideration of "negligence and all the circumstances surrounding the transaction" in question.

Admittedly, the code is in need of clarification as to its varying standards of negligence, but with regard to section 3418, Uniform Commercial Code Comment 4 (adopted from the official text) makes the criteria quite clear: "[This] section rejects decisions under the original Act permitting recovery on the basis of mere negligence of the holder in taking the instrument." This comment continues by concluding that the holder's negligence does not affect the finality of payment or acceptance unless "such negligence amounts to a lack of good faith . . . or to notice under the rules (Section 3-304) relating to notice to a purchaser of an

---

[31]Even if we were to use the "giving of value" requirement (necessary for the bank to become a holder in due course) as the standard with which to determine at what point Security can be said to have "relied" upon the final payment, we arrive at the same conclusion. Under code section 4209, a bank has given value to the extent that it has a security interest in an item. Section 4208 states that a bank has a security interest in "an item deposited in an account to the extent to which credit given for the item has been withdrawn or applied," or "for which it has given credit available for withdrawal as of right . . . ." (Com. Code, § 4208, subd. (1)(a)(b).) Credit given by a bank becomes available for withdrawal as of right when the bank receives final settlement and has had a reasonable time to learn that such settlement is final. (Com. Code, § 4213, subd. (4)(a).) The California Supreme Court, in *Sun 'N Sand, supra,* held that it is at this point that the bank is committed to giving credit to its customer and "may no longer protect itself by merely debiting his account . . . [and therefore] has given value . . . ." (*Sun 'N Sand, Inc.* v. *United California Bank, supra,* 21 Cal.3d 671, 689.) The court cited section 4212, subdivision (1), noting that at the time of final payment the bank's right to revoke its provisional settlement terminates.

instrument . . . ." Uniform Commercial Code Comment 1 makes clear that the term "notice" as used in section 3304 is defined in section 1201, subdivision (25). Subdivision (25)(c) provides that one has notice of a fact when "[f]rom all the facts and circumstances known to him at the time in question he has reason to know that it exists." *Sun 'N Sand, supra,* noted that the phrase "reason to know," suggested an objective notion of notice, and in dicta the court disapproved of the more restrictive view of notice which the majority of jurisdictions follow. (21 Cal.3d 671, 697, fn. 21.) In these jurisdictions negligence must be so gross as to amount to bad faith before notice will be found. (See, e.g., *Eldon's Sup. Fresh Stores, Inc.* v. *Merrill Lynch, etc.* (1973) 296 Minn. 130 [207 N.W.2d 282, 287]; *Richardson Company* v. *First Nat. Bank in Dallas* (Tex.Civ.App. 1974) 504 S.W.2d 812, 816.)[32]

Appellant cites section 3304 of the Commercial Code as providing that the purchaser of commercial paper has notice of a claim or defense if (subd. (1)(a)): "The instrument is so incomplete, bears such visible evidence of forgery or alteration, or is otherwise so irregular as to call into question its validity, terms or ownership or to create an ambiguity as to the party to pay; . . ." (Subd. (4)(e)): "[A]ny person negotiating the instrument is or was a fiduciary."

Fireman's apparently is contending (1) that Security was put on notice of inquiry because of the purported "ambiguity" as to the party to be paid, and (2) that Security had a duty of inquiry because it purportedly had notice that the person negotiating the instrument was a fiduciary. Both contentions are without merit.

In the first instance, we have already concluded that the payee line was not "so irregular" as to call into question the validity of the instrument; and, secondly, Fireman's has misstated Commercial Code section 3304 with regard to its claim that a collecting bank has notice of a claim or defense when it has knowledge that the person negotiating an item is or was a fiduciary.[33]

---

[32]These courts adhere to the position that the concept of notice as found within section 3304 expressly deemphasizes the significance of facts that courts in the past have considered presumptively suspicious. (See §§ 3304, subds. (2), (4), 3206, subd. (4); *Universal C.I.T. Credit Corp.* v. *Ingel* (1964) 347 Mass. 119 [196 N.E.2d 847].)

[33]Apparently Fireman's is referring to section 3304, subdivision (2), which states that "The purchaser has notice of a claim against the instrument when he has knowledge that a fiduciary has negotiated the instrument in payment of or as security for his own debt or in any transaction for his own benefit or otherwise in breach of duty." The key words are

Section 3304, subdivision (4)(e), provides expressly to the contrary:

"(4) Knowledge of the following facts *does not* of itself give the purchaser notice of a defense or claim . . . (e) That any person negotiating the instrument is or was a fiduciary." (Italics added.)

Even accepting the restrictive view of notice, as approved by *Sun 'N Sand,* we find that the alleged facts herein do not constitute such notice. Even if Security was aware that the item was being negotiated by a fiduciary, unless it took the item with knowledge of a breach of trust (there being no such allegation in the case at bar), or, at a minimum, without "objective indicia from which [it] could reasonably conclude that the party presenting the check [was] authorized to transact in the manner proposed," it was free to assume that the fiduciary was acting properly.

Unlike *Sun 'N Sand,* in which the defendant bank's "negligence derives from its failure to respond reasonably to the 'notice' conveyed by . . . suspicious circumstances," we find in the case at bar that there was no "notice" as defined in Commercial Code section 3304. (*Id.,* at p. 697.)

Therefore, we conclude that Security, as both a holder in due course[34] and as "a person who has in good faith changed his position in reliance on the payment," qualifies for protection under the final payment rule embodied in section 3418 of the code.

Before turning to the consequences of such protection, we address ourselves to one final argument Fireman's makes in an attempt to preclude such coverage. Fireman's argues that even if more than "mere negligence" is required to deprive one of the availability of the section 3418 shield, the violation by Security of its own regulations may amount to "gross negligence." However, we note that a holder's good faith has been upheld despite violation of the holder's own managerial rules

"or otherwise in breach of duty." For it is not the fact alone that it is a fiduciary who is negotiating the instrument, but rather that there is no "objective indicia from which the bank could reasonably conclude that the party presenting the check is authorized to transact in the manner proposed." (*Sun 'N Sand, Inc.* v. *United California Bank, supra,* 21 Cal.3d 671, 695-696.)

[34]Section 3302, subdivision (1), of the Commercial Code states:

"A holder in due course is a holder who takes the instrument: (a) For value; and (b) In good faith; and (c) Without notice that it is overdue or has been dishonored or of any defense against or claim to it on the part of any person."

regarding check cashing. (*Industrial Nat. Bank of R. I.* v. *Leo's Used Car Ex., Inc.* (1973) 362 Mass. 797 [291 N.E.2d 603, 606].) In this case, the court held that the fact that a bank teller took and cashed two checks of a corporation drawn on another bank, in violation of an internal rule of the cashing bank requiring the approval of the manager before such checks should be cashed, made no difference in testing the good faith of the bank.

The facts here are similar to those presented in *Aetna Life & Casualty Co.* v. *Hampton State Bank* (Tex.Civ.App. 1973) 497 S.W.2d 80, in which a drawee bank tried to recover on a forged check after payment to the collecting bank. The drawee bank argued that the collecting bank was liable to the drawee based on common law negligence. In rejecting this argument, and specifically referring to Uniform Commercial Code section 3418, the court made the following observations: "The code sweeps away all exceptions to the Price v. Neal rule and substitutes the more definite standard of good faith for the standard of ordinary care, which produced confusion and uncertainty. J. Brady, Bank Checks 469 (4th ed. H. Bailey 1969). Consequently, we find no merit in Hampton's argument, based on pre-code cases [dealing with negligence], that Hampton [the collecting bank] had a common-law liability to Northwest [the drawee bank] for negligence in failing to observe the prevailing banking practice of requiring a corporate resolution before permitting withdrawal from an account opened in a corporate name. Under § 3-418, common-law liability is excluded and the controlling question is whether payment of the check by Northwest to Hampton was 'final'." (*Id.,* at pp. 85-86.)

Likewise, Fireman's reliance on precode cases dealing with common law negligence is misplaced.

Moreover, even if notice of the reason-to-know type depends upon some grade of negligence or what is "commercially reasonable" (see, e.g., *Von Gohren* v. *Pacific National Bank of Washington* (1973) 8 Wn.App. 245 [505 P.2d 467]; *Kaw Valley State Bank and Trust Company* v. *Riddle* (1976) 219 Kan. 550 [549 P.2d 927]), the alleged facts of the instant case were not sufficiently suspicious that a duty to make reasonable inquiry arose. As *Sun 'N Sand* states " 'the chief element in determining whether defendant owes a duty or an obligation to plaintiff is the foreseeability of the risk. . . .' " (*Sun 'N Sand, Inc.* v. *United California Bank, supra,* 21

Cal.3d 671, 695, citing *Dillon* v. *Legg* (1968) 68 Cal.2d 728, 740 [69 Cal.Rptr. 72, 441 P.2d 912, 29 A.L.R.3d 1316].)

The key fact here is that there were two signatures on the check in question, only one of which was that of the fiduciary (Keyes). Even if Security had noticed, as alleged, that Keyes was a fiduciary and the named payee on the check (signator of the account to which the payee line was made out), Security could have relied upon the second signature as an assurance that no misappropriation or fraud was being conducted which would lead to a foreseeable risk to Fireman's. Security awaited final payment from Banco (whose duty it was to verify the signatures) before it released the $25,000 which the check represented. We find that the presence of the second signature, coupled with the fact that a specific name and account number was designated as payee of the check, satisfied the requirement stated in *Sun 'N Sand* that "[t]here must be objective indicia from which the bank could reasonably conclude that the party presenting the check is authorized to transact in the manner proposed." (*Id.,* at pp. 695-696 of 21 Cal.3d.) It is only in the absence of such indicia that the bank "pays at its peril." (*Id.,* at p. 696 of 21 Cal.3d.)

Noting that section 3418 articulates a loss distributive scheme that is applicable to the fact pattern as alleged herein (forged drawer's signature), we further find that this section displaces an action for common law negligence.

Fireman's final contention is that even if section 3418 precludes a common law action for negligence against a collecting bank after final payment has been made, this immunity applies only to a drawee bank, and not to a drawer. We agree with Fireman's initial contention that the settled relationship between a drawer and drawee bank is one of debtor and creditor and not that of principal and agent. (*Smiths' Cash Store* v. *First Nat. Bank* (1906) 149 Cal. 32, 34-35 [84 P. 663].) Thus, the drawer cannot be charged with the acceptance or payment of the check by the drawee bank through any agency concept. Fireman's argument, however, violates the plain meaning of section 3418. After listing certain exceptions, inapplicable in the instant case, the section states that "payment or acceptance of any instrument is final in favor of . . . a person who has in good faith changed his position in reliance on the payment." (Com. Code, § 3418.) It has been argued that the words "final payment" are technical words embodying only a payor bank. (See Com. Code, § 4213.) However, even assuming this to be true, such words

need not be limited to their technical meaning and effect if the context indicates that such a construction would frustrate the intention of the drafters. *(Shorb* v. *Barkley* (1952) 108 Cal.App.2d 873, 876-877 [240 P.2d 337].)

Only by the use of a negative inference can the language of section 3418 be said not to preclude an action by a drawer. However, " '[w]here a section is silent on a particular point, negative inference may be justified when the reason of the situation requires or justifies such an inference.' "[35]

In *Perini Corp.* v. *First Nat. Bank of Habersham County* (5th Cir. 1977) 553 F.2d 398, a federal court of appeals rejected plaintiff's claim that the final payment rule protects holders in due course only against subsequent claims of a drawee, and not those of a drawer. The plaintiff in *Perini* was a drawer who tried to bring a direct action for negligence against a collecting bank. The court noted that "[n]othing in the Code provide[d] [plaintiff with] an action against the collecting banks on the basis of [a] forged drawer's signature." *(Id.,* at p. 416.) It further noted that the code, however, displaces common law causes of action only to the extent they are inconsistent with the provisions of the code,[36] and then held that section 3418 did in fact bar the negligence cause of action. The court concluded its discussion by stating that section 3418 "allows one who meets its prerequisites to transfer a check secure in the knowledge that payment by the drawee ends the transaction with respect to claims that the drawer's signature is forged. See § 3-418, Comment 1. To allow the drawer, who as a regular customer of the drawee might be tempted to shift the loss away from that bank, the option of reopening the transaction would frustrate the expectations created by the Code." *(Id.,* at p. 417.)

This interpretation of the code is consistent with its underlying purpose to "simplify, clarify and modernize the law governing commercial transactions." (Com. Code, § 1102, subd. (2)(a).)

This interpretation is also in harmony with the finality policy which the drafter's recognize as the only valid modern basis for the rule of *Price* v.

---

[35]Franklin, *On the Legal Method of the U.C.C.* (1951) 16 Law & Contemp. Prob. 330, 335.

[36]"Unless displaced by the particular provisions of this code, the principles of law and equity, . . . shall supplement its provisions." (Com. Code, § 1103.)

*Neal.*[37] ("[To prevent] an opening up of a previous transaction or series of transactions upon an instrument which is later discovered to have been forged or paid in error for any reason." (Cal. U. Com. Code, § 3418, Cal. Com. 1.))

■ Finally, we consider whether Fireman's additional allegations that Security's violation of its own policies contained in its operations manual establish the existence of a duty owed to the noncustomer drawer.

Admitting these allegations as true for the purpose of ruling on the demurrer, we find that Fireman's has still failed in its attempt to state a cause of action for negligence.

While in some situations violation of a company rule may be used as evidence of breach of duty, it *cannot* be used to *establish* the existence of such a duty when contrary to both statutory and common law.

For the violation of a statute to create actionable negligence, the plaintiff must have suffered the type of harm sought to be prevented by the rule, and *also* be a member of the class of people for whose protection the rule was enacted. (*Routh* v. *Quinn* (1942) 20 Cal.2d 488, 491-492 [127 P.2d 1, 149 A.L.R. 215].) A self-imposed rule from a bank's internal operations manual would have even less effect than a statute.

Fireman's reliance on *Commercial Standard Ins. Co.* v. *Bank of America* (1976) 57 Cal.App.3d 241 [129 Cal.Rptr. 91], is of no avail. In that case the duty imposed upon the bank was based upon a contractual obligation.

We hold, therefore, that under the facts of this case a noncustomer drawer whose signature was forged on a check drawn upon his account is precluded, by divisions 3 and 4 of the California Uniform Commercial Code, from bringing a direct cause of action based upon statutory or

---

[37]In commenting on the application of section 3418, Uniform Commercial Code Comment 1 to that section notes as follows: "The section follows the rule of Price v. Neal, 3 Burr. 1354 (1762), under which a drawee who accepts or pays an instrument on which the signature of the drawer is forged is bound on his acceptance and cannot recover back his payment. . . . The traditional justification for the result is that the drawee is in a superior position to detect a forgery because he has the maker's signature and is expected to know and compare it; *a less fictional rationalization is that it is highly desirable to end the transaction on an instrument when it is paid rather than reopen and upset a series of commercial transactions at a later date when the forgery is discovered.*" (Italics added.)

common law negligence against a collecting bank after final payment has been made by the drawee bank.

Our holding, however, does not go so far as to preclude a drawer's direct cause of action for common law negligence against a collecting bank for the negligent handling of a check bearing a forged indorsement in all cases. We note that such a cause of action is nowhere specifically prohibited by the language of the code.[38] A court might conclude that equitable principles, not displaced by the code, and the duty to interpret the code liberally, when coupled with the overriding obligation to act in good faith, and the constant emphasis made by the code upon commercial reasonableness, permit a drawer to state an action directly against a collecting bank when the alleged facts indicate that the bank participated in the acts resulting in the loss suffered by the drawer. As we noted earlier, both statutory and case law unmistakably place the burden of loss from a forged indorsement on the party who deals with the forger. (*Covington* v. *Penn Square National Bank* (Okla. 1975) 545 P.2d 824, 826.) The code places the burden directly on the first bank in the collection process to insure that subsequent indorsements from the maker on a check are valid; and there is no duty either under law merchant or under the Uniform Commercial Code for the drawee bank to verify such indorsement of a payee on a check that comes to it from a collecting bank under warranty of indorsement.

While the underlying policy of section 3418 makes it clear that to allow a cause of action for negligence by the drawer against the collecting bank based on the latter's failure to ascertain whether the drawer's signature is forged would vitiate the final payment policy (*Perini Corp.* v. *First Nat. Bank, supra,* 553 F.2d 398), allowing a cause of action against a collecting bank for unreasonable conduct outside of the collection process, or for failure to detect a forged instrument, would not so impede the processing of check transactions as to vitiate the final payment policy of section 3418. In our view such a cause of action would comport with the modern objectives of the Uniform Commercial Code and the directives for its application as set forth in section 1102.

The final obstacle to such a plaintiff stating a cause of action for common law negligence might be the assertion of a failure to exercise a

---

[38]Where the Commercial Code provisions did not either establish nor negate a bank's liability, allegations of negligence were considered. (*Wright* v. *Bank of California, supra,* 276 Cal.App.2d 485.)

duty of care owed to him by a collecting bank. However it has been said that analysis of liability for negligence in terms of "duty" is a question-begging process. The California Supreme Court, in *Dillon* v. *Legg, supra,* 68 Cal.2d 728, 734, stated that "[t]he assertion that liability must . . . be denied because defendant bears no 'duty' to plaintiff 'begs the essential question—whether the plaintiff's interests are entitled to legal protection against the defendant's conduct. . . .'" A better approach is to weigh the policy considerations which "'lead the law to say that the particular plaintiff is entitled to protection.'" (See *Goodman* v. *Kennedy* (1976) 18 Cal.3d 335, 342 [134 Cal.Rptr. 375, 556 P.2d 737], and cases therein cited.)

In imposing liability for negligence upon UCB, the *Sun 'N Sand* court noted that "[t]he most important of these [policy considerations] were set forth in *Rowland* v. *Christian* (1968) 69 Cal.2d 108, 113 [70 Cal.Rptr. 97, 443 P.2d 561, 32 A.L.R.3d 496], and include[d] '. . . the foreseeability of harm to the plaintiff, the degree of certainty that the plaintiff suffered injury, the closeness of the connection between the defendant's conduct and the injury suffered, the moral blame attached to the defendant's conduct, the policy of preventing future harm, the extent of the burden to the defendant and consequences to the community of imposing a duty to exercise care with resulting liability for breach, and the availability, cost, and prevalence of insurance for the risk involved.'" (*Sun 'N Sand, Inc.* v. *United California Bank, supra,* 21 Cal.3d 671, 695. See also *Biakanja* v. *Irving* (1958) 49 Cal.2d 647, 650 [320 P.2d 16, 65 A.L.R.2d 1358]; *Commercial Standard Ins. Co.* v. *Bank of America* (1976) 57 Cal.App.3d 241, 248 [129 Cal.Rptr. 91].)

This approach would also be consonant with California's "strong policy favor[ing] fault-based liability; negligent tortfeasors must compensate persons injured by their failure to exercise ordinary care. (Civ. Code, § 1714 . . . .)" (*Sun 'N Sand, supra,* at p. 698 of 21 Cal.3d.) In that both statutory and case law clearly place the burden of loss from a forged indorsement on the party who deals with the forger, the foreseeability of the risk to the drawer, if such checks are handled in a negligent manner, is therefore direct and immediate. The drawee bank, having no means by which to ascertain the validity of such indorsement, cannot prevent the ensuing loss if the indorsement happens to be forged. Therefore, "the chief element in determining whether defendant owes a duty or an obligation to plaintiff. . . the foreseeability of the risk"[39] is present in the

---

[39]After recognizing that the burden on banks that would result from imposing a duty of inquiry upon them is a relevant consideration, the *Sun 'N Sand* court noted that "[i]t is

question of a collecting bank's liability for negligence to a noncustomer drawer whose losses stem from the bank's negligent handling of the latter's check bearing a forged indorsement.

With regard to the instant case, however, we reiterate our holding that under these facts a noncustomer drawer whose signature was forged on a check drawn from his account is precluded by the California Commercial Code from bringing a direct cause of action against a collecting bank after final payment has been made.

Sustaining a general demurrer without leave to amend is not an abuse of discretion if it appears from the complaint that under applicable substantive law there is no reasonable possibility or probability that the defect can be cured by amendment. (*Vater* v. *County of Glenn* (1958) 49 Cal.2d 815, 821 [323 P.2d 85].) Since we have determined that no cause of action exists for the alleged acts of Security, an amendment would serve no useful purpose.

The order of dismissal is affirmed.

Ashby, J., and Hastings, J., concurred.

A petition for a rehearing was denied November 8, 1978, and appellant's petition for a hearing by the Supreme Court was denied December 13, 1978.

---

settled, however, that 'the chief element in determining whether defendant owes a duty or an obligation to plaintiff is the foreseeability of the risk . . . .' (*Dillon* v. *Legg* (1968) 68 Cal.2d 728, 740 . . . ; see also *Weirum* v. *RKO General, Inc.* (1975) *supra* 15 Cal.3d 40, 46 [123 Cal.Rptr. 468, 539 P.2d 36]; *Tarasoff* v. *Regents of University of California* (1976) 17 Cal.3d 425, 434-435 [131 Cal.Rptr. 14, 551 P.2d 334, 83 A.L.R.3d 1166].)" (*Id.*, at p. 695 of 21 Cal.3d.)