Filed 9/30/16  Howard v. Wells Fargo CA4/1

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

### COURT OF APPEAL, FOURTH APPELLATE DISTRICT

### DIVISION ONE

### STATE OF CALIFORNIA

| | |
|---|---|
| MICKEY HOWARD et al., | D068071 |
| Plaintiffs and Appellants, | |
| v. | (Super. Ct. No. 37-2014-00018390-CU-MC-CTL) |
| WELLS FARGO, N.A., | |
| Defendant and Respondent. | |

APPEAL from a judgment of the Superior Court of San Diego County, Joan M. Lewis, Judge.  Affirmed.

Steven H. Wilhelm and Steven H. Wilhem for Plaintiffs and Appellants.

Barton, Klugman & Oetting, Tod V. Beebe and Terry L. Higham for Defendant and Respondent Wells Fargo, N.A.

Howard Agency, LLC (Howard Agency)[1] appeals a judgment of dismissal following the sustaining of a demurrer to its first amended complaint (FAC). The FAC asserted causes of action against Wells Fargo, N.A. (Wells Fargo) for negligence, conversion, and aiding and abetting based on allegations Wells Fargo routinely cashed forged checks made payable to and presented by an employee of Howard Agency. We conclude the trial court did not err in sustaining the demurrer and affirm the judgment of dismissal.

FACTUAL AND PROCEDURAL BACKGROUND

Because this appeal arises from the sustaining of a demurrer, we summarize the underlying facts stated in the FAC, accepting as true the properly pleaded factual allegations. (See *Debrunner v. Deutsche Bank National Trust Co.* (2012) 204 Cal.App.4th 433, 435-436.)

*Factual Allegations in Howard's FAC*

Howard Agency is an insurance business primarily owned and operated by Mickey Howard. Howard first hired Geraldine Coleman, his wife's half sister, as an administrative assistant for Howard Agency in 2004 but Coleman resigned and moved out of state in 2005. Coleman returned to California and Howard Agency in 2009, working as Howard Agency's full-time administrative assistant.

At all relevant times, Howard was fighting cancer, spent only about 25-35 percent of a normal work week in the office, and was unable to spend significant time running,

---

[1] The parties previously stipulated to dismiss Mickey Howard, as an individual, as to all causes of action asserted against Wells Fargo.

supervising, and overseeing the business. As a result, Howard Agency relied on Coleman to oversee the day-to-day operations, including making bank deposits, operating Howard Agency's QuickBooks accounting system, and preparing checks from Howard Agency's general account for Howard's signature. Coleman had signing authority on the Howard Agency's general business bank account, held at California Bank & Trust (CB&T), for a time but her authority was revoked in 2011 because she was not a member of the Howard Agency corporation. Coleman never had authority to sign Howard's name to Howard Agency checks.

Between early 2011 and February 2014, Coleman embezzled at least $787,364.21 by writing Howard Agency checks to herself, forging Howard's name on the signature line, and cashing them. On virtually all occasions, Coleman cashed the checks at a Wells Fargo branch office located inside a grocery store. Other than the very first time she cashed a Howard Agency check at the branch, none of the tellers took any precautions to ensure the check was legitimate and not forged. On various occasions, Coleman cashed up to six checks a day, at times over multiple visits to the same branch in a single day, on 10 or more business days during a single month, and often cashed multiple checks bearing sequential check numbers with the same issue date in a single transaction. Coleman had a Wells Fargo checking account at the time but typically kept only $100 to $500 in the account.

In February 2014, a teller from CB&T inquired whether Howard was aware of a number of suspicious checks from Howard Agency that Coleman had cashed. Thereafter, Coleman admitted she had embezzled the money.

3

*Complaint, FAC and Demurrers*

After an initial demur, Howard Agency filed the FAC which included causes of action against Wells Fargo for negligence, conversion, and aiding and abetting. Wells Fargo demurred to the FAC and Howard Agency opposed the demurrer. The trial court sustained the demurrer without leave to amend and entered judgment dismissing the complaint as against Wells Fargo. The court concluded Wells Fargo did not owe a duty to Howard Agency with respect to the negligence cause of action, The California Uniform Commercial Code section 3420[2] precluded the cause of action for conversion, and Howard Agency failed to plead facts sufficient to support an allegation Wells Fargo knew of the embezzlement under an aiding and abetting theory.

## DISCUSSION

On appeal Howard Agency argues as follows: (1) the FAC alleges facts sufficient to establish Wells Fargo owed a duty to Howard Agency due to the suspicious circumstances; (2) section 3420 does not preclude the cause of action for conversion because Howard Agency was not the "maker" of the embezzled checks; and (3) the FAC adequately alleges Wells Fargo employees were aware of the embezzlement and intended to assist Coleman. We conclude the court properly sustained the demurrer and affirm the judgment.

---

[2]     All further statutory references are to the California Uniform Commercial Code, unless otherwise indicated.

4

## I.  Standard of Review

We review a judgment of dismissal based on an order sustaining a demurrer de novo, exercising our own independent judgment to determine whether the complaint states sufficient facts to constitute a cause of action or a right to the relief requested. (*Los Altos El Granada Investors v. City of Capitola* (2006) 139 Cal.App.4th 629, 650; *Blank v. Kirwan* (1985) 39 Cal.3d 311, 318 (*Blank*).)  We read the pleading as a whole and assume the truth of the facts properly pleaded by the plaintiff, as well as evidentiary facts found in exhibits attached to a pleading.  (*Blank*, at p. 318; *Frantz v. Blackwell* (1987) 189 Cal.App.3d 91, 94.)  However, we do not admit plaintiff's contentions, deductions or conclusions of law or fact.  (*Blank*, at p. 318.)

## II.  California Uniform Commercial Code

The California Uniform Commercial Code creates a uniform statutory scheme governing commercial transactions.  (§ 1102.)  Unless displaced by particular provisions of the code, general principles of law and equity supplement the code.  (§ 1103.)

The California Uniform Commercial code sets forth a number of definitions governing the check collection process that are helpful to our discussion here.  A "check" is a draft payable on demand and drawn on a bank.  (§§ 3104, subd. (f), 4104, subd. (c).)  A "drawer" is a person who "signs or is identified in a [check] as a person ordering payment," an "issuer" is a maker or drawer of a check, and the person, or bank, ordered to make payment on the check is the "drawee" or "payor bank."  (§§ 3103, subd. (a)(2), (a)(3), 4104, subd. (a)(8), 4105, subd. (3).)  An "indorsement" is a signature, other than that of a drawer, that is made for the purpose of negotiating the check (§ 3204, subd. (a)),

5

and an "indorser" is a person who makes an indorsement. (§ 3204, subd. (b).) A "collecting bank" is a bank handling an item for collection that is not the payor bank (§ 4105, subd. (5)), and a "depositary bank" is the first bank to take a check regardless of whether it is the payor bank. (§ 4105, subd. (2).) A "presentment" is a demand made on behalf of the collecting bank, now the "presenting bank," to the payor bank to accept or pay the check. (§§ 3501, subd. (a), 4104, subd. (c), 4105, subd. (6).)

The California Uniform Commercial code places the responsibility for loss attributable to forged signatures on negotiable instruments, including checks, on the party typically in the best position to prevent the loss. (*Los Angeles Nat. Bank v. Bank of Canton* (1991) 229 Cal.App.3d 1267, 1278.)

### III. Analysis

#### A. *The FAC Fails to State a Cause of Action for Negligence*

Howard Agency first argues it has stated a cause of action for negligence because the suspicious circumstances surrounding Coleman's cashing of the embezzled checks created a duty on behalf of Wells Fargo.

Absent extraordinary circumstances, the drawer of a check cashed upon a forged signature, either of the drawer or the payee, may not maintain an action for negligence against the collecting bank. (*Fireman's Fund Ins. Co. v. Security Pacific Nat. Bank* (1978) 85 Cal.App.3d 797, 829-830 (*Fireman's Fund*); *Cal. Mill Supply Corp. v. Bank of America* (1950) 36 Cal.2d 334.) A collecting bank cashing or accepting a check typically owes no duty to a noncustomer drawer. (*Chicago Title Ins. Co. v. Superior Court* (1985) 174 Cal.App.3d 1142, 1159 [banks owe no duty to inform on suspicious customers];

6

*Casey v. U.S. Bank Nat. Assn.* (2005) 127 Cal.App.4th 1138, 1149 (*Casey*) [banks owe no duty to nondepositors to investigate or disclose an account holder's suspicious activities]; *Software Design & Application, Ltd. v. Hoefer & Arnett, Inc.* (1996) 49 Cal.App.4th 472, 479 [banks do not owe duty to noncustomer absent extraordinary and specific facts].)

Instead, the payor bank is liable when it pays on a forged check, absent negligence on the part of the drawer, as it has a duty to know the drawer's signature. (*Fireman's Fund*, *supra*, 85 Cal.App.3d at p. 805.) In addition, it is the responsibility of the account holder to review regular statements provided by the payor bank to identify any unauthorized transactions resulting from, for example, an unauthorized or forged account holder signature. (§ 4406, subds. (a), (b) & (c).)

Here, Coleman, an employee of Howard Agency, forged Howard's signature on checks made out to herself and cashed them at a Wells Fargo branch. Wells Fargo presented the checks to CB&T, the payor bank, and CB&T consistently paid out on the checks. Because Howard Agency had no relationship with Wells Fargo, the collecting bank, Wells Fargo owed no duty to Howard Agency and Howard Agency may not maintain a cause of action for negligence against Wells Fargo.

Howard Agency's reliance on *Sun 'n Sand*, *Inc. v. United California Bank* (1978) 21 Cal.3d 671 (*Sun 'n Sand*) to create a duty based on suspicious circumstances is misplaced as the duty created by *Sun 'n Sand* is narrowly circumscribed and distinguishable from the present case. In *Sun 'n Sand*, an employee presented United California Bank (UCB) with forged checks made payable to UCB and UCB agreed to deposit the checks into the employee's personal account. (*Id*. at p. 692.) The Supreme

7

Court of California concluded UCB engaged in affirmative risk-creating conduct by allowing the employee to deposit the checks in a personal account despite not being the payee on the checks. (*Id*. at p. 693.) The Court made a point to distinguish the conduct of UCB from a bank simply failing to intervene beneficially on behalf of the issuer of a check with whom it had no relationship. (*Ibid*.) Here, Coleman, the individual cashing the checks—not Wells Fargo—was the named payee on the checks. While the number and frequency of checks was, perhaps, suspicious, Wells Fargo had no duty to question its own customer as to why she had received the checks.[3]

Howard also relies on two post *Sun 'n Sand* cases, each of which are similarly distinguishable. In each, the bank accepted a check from someone that was made payable to someone else. (See *E.F. Hutton & Co. v. City National Bank* (1983) 149 Cal.App.3d 60, 67-68 (*E.F. Hutton*) [employee forged endorsements on checks for substantial amounts payable to various payees and deposited them into his personal account]; *Joffe v. United California Bank* (1983) 141 Cal.App.3d 541, 556 [company deposited check for a substantial amount payable to an escrow account at another bank].)

Howard Agency argues the reasoning of *Sun 'n Sand* should apply to the present case even if the facts are distinguishable. We disagree. The duty to exercise reasonable care established by *Sun 'n Sand* depended upon the foreseeability of the risk to the drawer by UCB ignoring the danger signals inherent in the attempted negotiation. (*E.F. Hutton*,

---

3    One can imagine legitimate reasons for receiving multiple checks in series on a regular basis, such as an employee receiving commissions related to multiple different accounts.

8

*supra*, 149 Cal.App.3d at p. 67, citing *Sun 'n Sand*, *supra*, 21 Cal.3d at p. 695.)  In the present case, Wells Fargo did not engage in any analogous risk-creating behavior because the objective indicia—checks made out to Coleman and signed by Howard Agency—instead indicated Coleman was authorized to cash the checks.

The facts of this case are, instead, similar to *Karen Kane, Inc. v. Bank of America* (1998) 67 Cal.App.4th 1192.  There, an employee defrauded Kane by cashing numerous checks, totaling approximately $760,000, endorsed by Kane and made payable to various fictitious companies.  (*Id*. at p. 1196.)  Each check included two handwritten endorsements—the name of the payee company and the name of the individual cashing them—and in each instance the named payee received the proceeds.  (*Id*. at p. 1198.)  The court concluded the check cashing service owed no duty to Kane, who was in the best position to protect itself from the employee's scheme.  (*Id*. at p. 1199.)  Similarly, here, Howard Agency was in the best position to police its own financial practices, to avoid being defrauded by its employee, and to obtain insurance to protect itself.  Wells Fargo owed Howard Agency no duty.

Based on the foregoing, we conclude Howard Agency cannot assert a cause of action for negligence against Wells Fargo.

### B.  The FAC Fails to State a Cause of Action for Conversion

Next, Howard Agency argues section 3420 does not preclude the asserted cause of action for conversion because Coleman, and not Howard Agency, was the "issuer" of the checks.

Section 3420 states, in part, "[a]n action for conversion of an instrument may not be brought by [] the issuer or acceptor of the instrument." The drafters added this clause specifically to resolve the issue of whether the drawer of a check with a forged indorsement can assert rights against a depositary bank that took the check. (See Official Comments on U. Com. Code, Deering's Ann. Cal. U. Com. Code (2016 ed.) foll. § 3420.) Because a check is an obligation of a drawer, not property of the drawer, and the drawer has an adequate remedy against the payor bank for recredit of the drawer's account for the unauthorized payment, the drawer may not assert a cause of action for conversion against the depositary bank. (*Ibid.*) Here, Howard Agency is the drawer of the forged checks and section 3420 therefore precludes it from asserting a cause of action for conversion against Wells Fargo, the depositary bank that took the check. (§ 3420; see *Fireman's Fund*, *supra*, 85 Cal.App.3d at p. 797 [finding a noncustomer drawer whose signature was forged on a check drawn from his account was precluded from bringing a cause of action against the collecting bank].)

Howard Agency argues that Coleman, and not Howard Agency, is the "issuer" of the checks. To the contrary, the definition of "issuer" includes the drawer of a check (§ 3105, subd. (c)), and the definition of "drawer" includes a person identified in the check as the person ordering payment. (§ 3103, subd. (a)(3).) Further, the comments to section 3420 indicate the exclusion applies equally regardless of whether the signature of the drawer was forged as, in either case, a check is not the property of the drawer and the drawer has an adequate remedy against the payor bank. This interpretation is also consistent with the rule stated in *Stone & Webster Engineering Corp. v. First Nat'l Bank*

10

*& Trust Co.* (Mass. 1962) 184 N.E.2d 358 (*Stone*), which the drafters intended to follow. (See Official Comments on U. Com. Code, Deering's Ann. Cal. U. Com. Code, *supra*, § 3420, 487.) The court in *Stone* reasoned, because the collecting bank had no money belonging to the drawer, the drawer could not assert an action for conversion against it for accepting a check from an employee of the drawer who had forged the payee's indorsement thereon. (*Stone*, at pp. 359-360.) Although *Stone* involved a forged signature of the payee and not the drawer, the reasoning implores the same result—where a collecting bank holds no money belonging to a plaintiff, a cause of action for conversion against the bank is not proper.

Based on the foregoing, we conclude Howard Agency cannot assert a cause of action for conversion against Wells Fargo.

### C. The FAC Fails to State a Cause of Action for Aiding and Abetting

Finally, Howard Agency argues the FAC adequately alleges Wells Fargo employees were aware of the embezzlement and intended to assist Coleman, thereby stating a cause of action for aiding and abetting.

A cause of action for aiding and abetting "requires a defendant to reach a conscious decision to participate in tortious activity for the purpose of assisting another in performing a wrongful act." (*Howard v. Superior Court* (1992) 2 Cal.App.4th 745, 749.) To be liable for the intentional tort of aiding and abetting, the defendant must have actually known a specific tort had been, or was to be, committed and must have acted with the intent of facilitating the commission of the known tort. (*Casey*, *supra*, 127 Cal.App.4th at p. 1146.)

11

Here, the FAC fails to allege Wells Fargo had actual knowledge Coleman forged the checks or was otherwise committing fraud against Howard Agency by cashing the checks. The FAC alleges Wells Fargo "should have been alert to the risk that Coleman was perpetuating a fraud" based on her suspicious behavior. This allegation is not sufficient to establish actual knowledge or the intent necessary to facilitate commission of a known tort. The FAC also alleges Wells Fargo knew Coleman's conduct was a breach of her duties "and/or" gave substantial assistance to Coleman, thereby breaching its own duty to Howard Agency. This statement is indefinite, conclusory and insufficient to establish Wells Fargo had the requisite knowledge or intent. As such, Howard Agency has not pled facts sufficient to state a cause of action for aiding and abetting against Wells Fargo.

### D. Leave to Amend

Howard Agency has the burden on appeal to demonstrate it could have alleged additional facts in order to state a claim if given leave to amend. (*Hendy v. Losse* (1991) 54 Cal.3d 723, 742.) Howard Agency concedes it could not have done so. Therefore, we conclude the court did not err in granting the demurrer without leave to amend.

### DISPOSITION

The judgment is affirmed.

BENKE, Acting P. J.

WE CONCUR:

IRION, J.

PRAGER, J.*

---

\*      Judge of the San Diego Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.